HARTZ, Circuit Judge,
concurring:
I join Judge Tymkovich’s opinion but write separately to explain why I think (1) that all corporations come within the protection of the Free Exercise Clause and RFRA and (2) that the substantial-burden analysis here is a simple one.
I. CORPORATIONS AS PERSONS
To analyze whether corporations have civil rights, one must begin by recognizing what they are. For our purposes, two characteristics are the most important. First, ordinarily they are a means of organizing group activity, for social or business reasons. Second, the personal liability of owners is limited, thereby encouraging investment in the enterprise. The sole aim of a corporation may be to maximize profit or long-term value to shareholders. But no law requires a strict focus on the bottom line, and it is not uncommon for corporate executives to insist that corporations can and should advance values beyond the balance sheet and income statement. See ALI Principles of Corporate Governance: Analysis and Recommendations § 2.01(b) (2012) (“Even if corporate profit and shareholder gain are not thereby enhanced, the corporation, in the conduct of its business: ... (2) May take into account ethical considerations that are reasonably regarded as appropriate to the responsible conduct of business; and (3) May devote a reasonable amount of resources to public welfare, humanitarian, educational and philanthropic purposes.”).
Those who argue that a for-profit corporation does not have a right to the free exercise of religion point to three features of such an entity: (1) it is for profit, (2) it has adopted a corporate form, and (3) it is a group activity. It is unclear which of these features is thought to be the one that disqualifies corporations from the free-exercise right. In my view, however, none of these features can justify denial of rights protected under the First Amendment, including the right to free exercise of religion.
*1148 The first feature is the easiest to address because the Supreme Court has already recognized that profit-seekers have a right to the free exercise of religion. In Braunfeld v. Brown, 366 U.S. 599, 601, 81 S.Ct. 1144, 6 L.Ed.2d 563 (1961), the Court entertained a free-exercise challenge to Sunday blue laws by Jewish merchants “engage[d] in the retail sale of clothing and home furnishings.” And in United States v. Lee, 455 U.S. 252, 254, 102 S.Ct. 1051, 71 L.Ed.2d 127 (1982), an Amish farmer and carpenter was permitted to object on religious grounds to paying Social Security taxes for his employees. Perhaps profit-making is not a religious enterprise, but those who engage in profit-making enterprises can still have religious convictions that require them to do or refrain from doing certain things in their businesses. The Constitution does not require eompartmentalization of the psyche, saying that one’s religious persona can participate only in nonprofit activities. As Justice Brennan wrote, “[A] State may [not] put an individual to a choice between his business and his religion.” Braunfeld, 366 U.S. at 611, 81 S.Ct. 1144 (Brennan, J., dissenting).
Also, there is no principled reason why an individual who uses the corporate form in a business must thereby sacrifice the right to the free exercise of religion. Rabbi Manischewitz starts a business preparing kosher matzo. A city ordinance prohibits certain kosher practices. No one could doubt that he can challenge the ordinance under the Free Exercise Clause or RFRA. But, some say, he can no longer raise such a challenge if he decides to limit his personal liability arising from the business by converting it to a sole-shareholder corporation. Why? True, the government may impose special duties on those who use a corporate form, such as a duty to produce corporate records, and those duties may require limitations on constitutional rights. See Wilson v. United States, 221 U.S. 361, 383-85, 31 S.Ct. 538, 55 L.Ed. 771 (1911) (no Fifth Amendment privilege to refuse to produce corporate records). But surely the limitations must relate to use of the corporate form. Does it make sense to say, “Since you have acted to reduce your personal financial risk, you can now be required to stop making kosher matzo.”? What does limiting financial risk have to do with choosing to live a religious life? Although a corporation takes on a legal identity distinct from the sole shareholder, First Amendment jurisprudence is based on the substance of the constitutional protections, not matters of form. See Bd. of Cnty. Comm’rs v. Umbehr, 518 U.S. 668, 679-80, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996) (citing cases); Bd. of Educ. v. Grumet, 512 U.S. 687, 698, 114 S.Ct. 2481, 129 L.Ed.2d 546 (1994) (plurality opinion) (“In the circumstances of these cases, the difference between thus vesting state power in the members of a religious group as such instead of the officers of its sectarian organization is one of form, not substance.”). Indeed, as Judge Tymkovich’s opinion recites, use of the corporate form has not disqualified nonprofit corporations from invoking the protections of the Free Exercise Clause and RFRA. And for-profit corporations have been protected by rights to freedom of speech and freedom of the press. See, e.g., Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd., 502 U.S. 105, 112 S.Ct. 501, 116 L.Ed.2d 476 (1991); New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).
What about the group-activity feature of corporations? No one suggests that organizations, in contrast to their members, have souls. But it does not follow that people must sacrifice their souls to engage in group activities through an organization. Working with others through an organization can often be advantageous in many *1149 respects. Of course, one who acts through a group loses a measure of personal autonomy and privacy. The group may say something that is anathema to one of its members or do something contrary to the religious faith of a member. Thus, the civil liberties of an organization — say, to exercise religion or to speak — must be considered distinct from the civil liberties of any particular member. Its speech or conduct may reflect the view of only a bare majority of the members, or even just the view of the members’ delegate — such as the editor of a newspaper or the pastor of a congregation. It suffices that the speech or conduct represents an “official position.” See Boy Scouts of Am. v. Dale, 530 U.S. 640, 655, 120 S.Ct. 2446, 147 L.Ed.2d 554 (2000) (“[T]he First Amendment simply does not require that every member of a group agree on every issue in order for the group’s policy to be ‘expressive association.’ The Boy Scouts takes an official position ... and that is sufficient for First Amendment purposes.”) But the advantages of acting through an organization may still be attractive to the individual. One who wants to have a prosperous business, but a business that still does nothing contrary to one’s faith, can reasonably decide that the best way to accomplish this is to join with like-minded persons, perhaps as partners, perhaps as fellow shareholders. Is that desire to be thwarted because the government can require the organization to engage in sins that could not be required of any of the members individually? Rabbi Manischewitz need not comply with an ordinance prohibiting the baking of kosher matzo, but when he obtains investors and the business is incorporated as Manischewitz, Inc., the anti-kosher law can be enforced against it? Must he reorganize the business as a sole proprietorship to continue to make and sell kosher matzo? [1]
As noted in Judge Tymkovich’s opinion, the Supreme Court has recognized that civil liberties are preserved for those who work through groups. “An individual’s freedom to speak, to worship, and to petition the government for the redress of grievances could not be vigorously protected from interference by the State unless a correlative freedom to engage in group effort toward those ends were not also guaranteed.” Roberts v. United States Jaycees, 468 U.S. 609, 622, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984); cf. Grumet, 512 U.S. at 698, 114 S.Ct. 2481 (“religious people (or groups of religious people) cannot be denied the opportunity to exercise the rights of citizens simply because of their religious affiliations or commitments, for such a disability would violate the right to religious free exercise” (emphasis added)).[2] There is no reason why that group should lose constitutional protection if it is organized in corporate form. Cf. United States v. Int’l Union UAW-CIO, 352 U.S. 567, 597, 77 S.Ct. 529, 1 L.Ed.2d 563 (1957) (Douglas, J., dissenting, joined by C.J. Warren and J. Black) (“Some may think *1150 that one group or another should not express its views in an election because it is too powerful, because it advocates unpopular ideas, or because it has a record of lawless action. But these are not justifications for withholding First Amendment rights from any group^ — labor or corporate.”).
Perhaps in certain circumstances the use of the corporate form can be a proper ground for limiting (but not eliminating) First Amendment rights. The reasons argued for restricting political expenditures by corporations include the asserted inclinations and advantages of corporations in corrupting officeholders. See Citizens United v. Fed. Election Comm’n, 558 U.S. 310, 447-75, 130 S.Ct. 876, 175 L.Ed.2d 753 (Stevens, J., dissenting). But no such concern has been raised here, and I fail to see how such a concern could arise. A corporation exercising religious beliefs is not corrupting anyone. Nor do I see how it would have any special inclination or advantage in exercising religious beliefs to the public detriment.
In short, those arguing that for-profit corporations cannot be “persons” under RFRA can find no support in any principles established in Supreme Court First Amendment jurisprudence. They must resort to pointing out that the Supreme Court has never ruled that a for-profit corporation has a right to the free exercise of religion. But neither has it ruled to the contrary. The fact of the matter is that it has never had to decide the issue. Interestingly, the issue was raised by the government in Gallagher v. Crown Kosher Super Market of Massachusetts, Inc., 366 U.S. 617, 81 S.Ct. 1122, 6 L.Ed.2d 536 (1961), one of the associated cases challenging Sunday blue laws on various grounds. Because the Court had already rejected the free-exercise claim in another decision, it said that it did not have to decide whether the corporation, its customers, or the rabbis who supervised the condition of kosher meat had standing to bring a free-exercise challenge. See id. at 631, 81 S.Ct. 1122. But the three dissenters, Justices Douglas, Brennan, and Stewart, implicitly found standing.
Of course, a corporation is protected only in its sincere religious beliefs. Chief Judge Briscoe’s opinion expresses concern about “how easily an ‘exercise of religion’ could now be asserted by a corporation to avoid or take advantage of any governmental rule or requirement.” Briscoe Op. at 1164-65. This is certainly a proper concern, just as courts can properly be concerned about the sincerity of prisoners who convert to Judaism and demand kosher meals. But sincerity questions with respect to corporations should not be unmanageable. It should not be hard to determine who has authority to speak or act for the corporation. And sincerity can be measured by consistency of the present stated belief with the history of the enterprise. Unlike prisoners, for example, corporations are not known to have epiphanies or sudden conversions.
Insofar as Chief Judge Briscoe’s opinion is concerned about “opening] the floodgates to RFRA litigation challenging any number of federal statutes that govern corporate affairs,” id. at 1174, it does not explain why that danger is any greater than the possibility of litigation on behalf of sole proprietors, or perhaps partnerships and other business organizations. But in any event, it makes no sense under RFRA to refuse to grant a merited exemption just because others may also seek it. How ironic if a burden on religious objectors can be justified because “too many” objectors find a law repugnant. The fears expressed are reminiscent of what the Supreme Court wrote almost a quarter-century ago:
*1151 The government’s ability to enforce generally applicable prohibitions of socially harmful conduct, like its ability to carry out other aspects of public policy, cannot depend on measuring the effects of a governmental action on a religious objector’s spiritual development. To make an individual’s obligation to obey such a law contingent upon the law’s coincidence with his religious beliefs, except where the State’s interest is compelling — permitting him, by virtue of his beliefs, to become a law unto himself, contradicts both constitutional tradition and common sense.... Any society adopting such a system would be courting anarchy, but that danger increases in direct proportion to the society’s diversity of religious beliefs, and its determination to coerce or suppress none of them.
Emp’t Div. v. Smith, 494 U.S. 872, 885, 888, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990) (citations and internal quotation marks omitted). Accordingly, the Court held that a “neutral law of general applicability” cannot be challenged on free-exercise grounds. Id. at 879, 110 S.Ct. 1595; see id. at 888-89, 110 S.Ct. 1595 (listing civic obligations, such as paying taxes and minimum wages, that could otherwise be subject to “constitutionally required” exemptions). That view, of course, was soundly rejected when Congress enacted RFRA.
II. SUBSTANTIAL BURDEN
I would also add a few words on the meaning of “substantial burden.” It is important to distinguish between two types of laws that may violate the right to free exercise of religion. Some laws require a person to do something contrary to the person’s religious beliefs or to refrain from doing something required by those beliefs. Other laws do not order the violation of a religious duty but simply make it more difficult for a person to obey that duty. As I understand Supreme Court precedent, the first type of law imposes a substantial burden on free exercise, whatever the penalty imposed for violating the law. Measuring coercive impact to determine whether the law imposes a “substantial” burden is necessary only for the second type of law. For example, in Lee the law required the Amish businessman to pay social security taxes, which his faith prohibited him from doing. The substantial-burden discussion in Lee is short and sweet: “Because the payment of the taxes or receipt of benefits violates Amish religious beliefs, compulsory participation in the social security system interferes with their free exercise rights.” 455 U.S. at 257, 102 S.Ct. 1051. And in Thomas, which required the payment of unemployment benefits to a worker who was fired for refusing to engage in work contrary to his religious beliefs, the Court turned to an analysis of the burden on the worker only after noting that “the Indiana [unemployment-compensation] law does not compel a violation of conscience.” 450 U.S. at 717, 101 S.Ct. 1425. Later cases that examined whether there was a substantial burden similarly pointed out that compliance with the law would not itself violate the person’s religious views. See Jimmy Swaggart Ministries v. Bd. of Equalization, 493 U.S. 378, 391, 110 S.Ct. 688, 107 L.Ed.2d 796 (“There is no evidence in this case that collection and payment of the tax violates appellant’s sincere religious beliefs.”); Hernandez v. Comm’r, 490 U.S. 680, 699, 109 S.Ct. 2136, 104 L.Ed.2d 766 (“Neither the payment nor the receipt of taxes is forbidden by the Scientology faith generally, and Scientology does not proscribe the payment of taxes in connection with auditing or training sessions specifically.”). The law we address today compels the corporations to act contrary to their religious beliefs. They therefore suffer a substantial burden. I see no need to examine how damaging the sanctions for noncom *1152 pliance would be or how difficult it would be for the corporations to rearrange their present manner of operating their businesses to avoid violating the law.

. Judge Matheson suggests that it is not necessary for the corporation to have a. RFRA claim because the rabbi himself could raise a claim as an individual. See Matheson Op. at 1189 n. 15. But I do not share his confidence that a shareholder, director, or officer can have a personal free-exercise claim (under the First Amendment or RFRA) to challenge a law that commands only the corporation.

. To be entitled to First Amendment protection, the group’s speech or conduct need not be the purpose for forming the group. See Boy Scouts of Am. v. Dale, 530 U.S. 640, 655, 120 S.Ct. 2446, 147 L.Ed.2d 554 (2000) (“[A]ssociations do not have to associate for the 'purpose' of disseminating a certain message in order to be entitled to the protections of the First Amendment. An association must merely engage in expressive activity that could be impaired to be entitled to protection.”).